**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

```
    CHAMBERS OF                                          101 W. LOMBARD STREET
    PAUL W. GRIMM                                       BALTIMORE, MARYLAND 21201
CHIEF UNITED STATES MAGISTRATE JUDGE                              (410) 962-4560
                                                              (410) 962-3630 FAX
```

January 18, 2012

William James Nicoll, Esq.
Jenkins, Block & Assocs., Ste. 206
1040 Park Avenue
Baltimore, MD  21201

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: James E. Johnson v. Michael J. Astrue, Commissioner of Social Security, PWG-09-1970**

Dear Counsel:

Pending before this Court, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying James Johnson's claim for Disability Insurance Benefits("DIB"). (ECF Nos. 8,17,33).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). A hearing is unnecessary.  Local Rule 105.6.  For the reasons that follow, this Court GRANTS the Commissioner's Motion and DENIES the Plaintiff's Motion.

James Johnson (sometimes referred to as "Mr. Johnson" or "Claimant"), applied for DIB on March 27, 2006, alleging that he was disabled since March 7, 2006, due to obesity, a back injury resulting in chronic neck, back, and knee pain, headaches, a depressive disorder and a history of an acute cerebrovascular accident. (Tr. 14, 103, 142).  His claim was denied initially and upon reconsideration. (Tr. 67-69).  A hearing was held before an Administrative Law Judge ("ALJ"), the Honorable Judith

A. Showalter on October 22, 2008, where Mr. Johnson appeared and testified. (Tr. 24-66).

The ALJ subsequently denied his claim in a decision dated January 13, 2009. (Tr. 12-22). The ALJ found that although Claimant's morbid obesity, degenerative disc disease, depressive disorder and history of acute cerebrovascular accident all were "severe" impairments as defined in the Regulations, but they did not meet or medically equal any of the listed impairments ("the Listings") found in the Regulations. The ALJ also determined that Claimant retained the residual functional capacity ("RFC") to perform a range of light work.[1] (Tr. 16). In light of his RFC, the ALJ found that Claimant was not able to perform any of his past relevant work ("PRW"). However, after receiving testimony from a vocational expert ("VE") and considering his age, education, work experience, and RFC, the ALJ determined there were jobs that existed in the national and local economies in significant numbers which he could perform. Accordingly, the ALJ found that Claimant was not disabled. (Tr. 20-22). On May 28, 2009, the Appeals Council denied Claimant's request for review, making his case ready for judicial review. (Tr. 1-3).

Claimant presents several arguments in support of his contention that the Commissioner's final decision is not supported by substantial evidence.

First Claimant argues that all of his mental limitations were not adequately reflected in the hypothetical the ALJ presented to the VE. In particular, he contends that the ALJ should have included Claimant's GAF[2] score of 35. *See* Plaintiff's Memorandum, pp. 6-7. The Commissioner argues that the hypothetical the ALJ presented to the VE properly was based upon all the limitations she accepted as credible. *See* Defendant's Memorandum, pp. 8-11. While it is not necessarily prohibited or uncommon for a VE to render an opinion based on a claimant's GAF score, it is not essential to the RFC's accuracy. Thus, the

---

[1] The ALJ found that Claimant could perform routine, unskilled work but that he needed the ability to work at his own pace, with no more than occasional climbing, balancing, stooping, kneeling, crouching or crawling. The ALJ found that Claimant could not perform jobs that required overhead reaching, or constant use of the upper extremities for handling, fingering, or feeling. (Tr. 16).

[2] The GAF scale measures a "clinician's judgment of the individual's overall level of functioning." Am. *Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision 32 (2000).

2

ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate. See *Wilkins v. Barnhart*, 69 Fed.Appx. 775, 2003 WL 21462579 (7th Cir.(Ill.)); *Howard v. Commissioner of Social Sec.*, 276 F.3d 235,6th Cir.(Mich. 2002); *Centra v. Barnhart*, 2004 WL 49073, (N.D.Iowa); *Gruthoff v. Barnhart*, 2002 WL 31159075,(W.D. Tenn.). More importantly the ALJ did not ignore the reports of Dr. Dunahoo as Claimant argues. Rather the ALJ discussed Dr. Dunahoo's reports and thoroughly explained why she rejected the doctor's opinion that Mr. Johnson met Listing 12.04. (Tr. 21). After review of the record and the ALJ's decision, I find that the ALJ sufficiently discussed the medical evidence she considered and relied upon in determining Mr. Johnson's RFC for less than a full range of light work and that the limitations included in the questions presented to the VE are supported by the record.(Tr. 61-66). In sum, the hypotheticals presented to the VE with the limitations the ALJ described, are supported by substantial evidence. *See* SSR 96-8p (1996 WL 374184 *7 (S.S.A)).

Claimant next argues that the ALJ improperly rejected the opinions of his treating physicians in determining his RFC and erred by relying on the state agency physicians' opinions. *See* Plaintiff's Memorandum, pp. 7-8. I disagree. The opinions of the state agency reviewing and examining physicians--Dr. Biddison, Dr. Moore, Dale Peterson Ph.D., and Dr. Harkhani--were all considered by the ALJ in finding that Mr. Johnson was not disabled.  SSR 96-6p provides that an ALJ may afford great weight to non-examining state agency physicians' opinions.[3] The ALJ adequately discussed the reasons for affording the State Agency physicians' opinions significant weight. (Tr. 18-19). Doctor Peterson's assessment stated, *inter alia,* that Claimant had mild limitations in social functioning and daily living and a moderate limitation in maintaining concentration persistence and pace. (Tr. 18, 440).  Equally important is that in rendering his opinions, Dr. Biddison explained that he reviewed Claimant's physician's statement that Claimant could not perform his prior job, but found it was not supported by the records and that this was a decision reserved for the Commissioner.(Tr. 377).  Mr. Johnson was seen by Dr. Harkhani in 2007, who noted Mr. Johnson was sad but calm, and cooperative. Dr. Harkhani reported that

---

[3] SSR 96-6p, in relevant part, states:*3 In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists **may be entitled to greater weight than the opinions of treating or** examining sources. SSR 96-6P, 1996 WL 374180 at *2*3(S.S.A.)(emphasis added).

3

Claimant's insight and judgment were good, he was alert and oriented x3, calm, had clear thought processes, and had fair judgment and insight. (Tr. 420). These observations all support the ALJ's finding that Mr. Johnson was not disabled.  Thus, the ALJ's decision not to afford controlling weight to the opinions of Claimant's treating physician and instead accord greater weight to the state agency physicians was adequately explained and is supported by substantial evidence.

Mr. Johnson also argues that the ALJ incorrectly analyzed his complaints of pain and the effects it had on his ability to perform work.  Because pain itself can be disabling, "it is incumbent upon the ALJ to evaluate the effect of pain on a claimant's ability to function." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989); *see also Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980).  In this Circuit, it is well-established that an ALJ must follow the two-step process for assessing complaints of pain as set forth in *Craig v. Chater*, 76 F.3d 585,594-596 (4th Cir. 1996).  *See, e.g., Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652-653 (D. Md. 1999); *Hill v. Comm'r.*, 49 F. Supp. 2d 865, 868 (S.D.W.Va. 1999).  First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment that reasonably could be expected to cause the pain the claimant alleges he or she suffers. *Craig*, 76 F.3d at 594, *citing* 20 C.F.R. §§ 416.929(b) and 404.1529(b).  This first prong, however, does not require a determination regarding the intensity, persistence, or functionally limiting effects of the pain asserted. *Id.*  This is reserved for the second inquiry, which is an evaluation of the "intensity and persistence of the claimant's pain, and the extent to which it affects the claimant's ability to work." *Craig,* 76 F.3d at 595.  Importantly in assessing the intensity and persistence of claimant's pain, claims of disabling pain may not be rejected solely because the available objective evidence does not substantiate the claimant's statements as to the severity and persistence of her pain.  20 C.F.R. §§ 416.929(c)(2) and 404.1529(c)(2).

Here, it is not the first prong of the *Craig* test that is challenged: clearly, the ALJ found that Mr. Johnson suffers from medical impairments reasonably expected to cause pain, namely his headaches, neck, knee, and back pain. (Tr. 16-17).  It is the intensity of his pain and its duration that the ALJ questioned. In the ALJ's opinion, the claimant's statements regarding his impairments and their impact on his ability to

4

work were inconsistent with the clinical and objective findings, the reports from treating and examining physicians, his history of treatment and medications, and other evidence in the record. (Tr. 17-21). After review of the ALJ's decision, I find the ALJ recognized her duty and evaluated properly Mr. Johnson's allegations of pain. The ALJ did not rely solely on the existence or nonexistence of objective medical records in judging the intensity and persistence of Claimant's pain. Rather, the ALJ also evaluated the evidence submitted by Mr. Johnson regarding his activities, the treatments he follows-- including medications, pain management and his testimony at the hearing[4].(Tr. 17-20, 245-278). These factors, coupled with Mr. Johnson's testimony regarding his activities, were appropriately considered,[5] and they provide substantial support for the ALJ's conclusion. Accordingly, there is substantial evidence to support the ALJ's analysis of Mr. Johnson's allegations of pain.

Claimant's final argument is that the Appeals Council erred by returning additional evidence that Claimant filed. *See* Claimant's Memorandum pp. 11-12. These records were created after the ALJ's hearing, and the Appeals Council noted their receipt in the opinion denying review of Mr. Johnson's case. (Tr. 2). This Court's opinion in *Hawker v. Barnhart*, 235 F. Supp. 2d 445 (D. Md. 2002) directly addresses this issue. Mr. Johnson asserts that the Appeals Council acted improperly by returning the records to Mr. Johnson and not making them part of the administrative record before the Court. This argument is without merit. As this Court stated in *Hawker*, if the Appeals Council states that it considered the substance of documents post-administrative hearing and determines that they do not

---

[4] The ALJ noted Claimant's testimony that he does not think that he has a mental impairment. (Tr. 16).

[5] SSR 96-7p provides: the adjudicator must consider certain factors "in addition to the objective medical evidence when assessing the credibility of an individuals statements": Those factors include 1. The individual's daily activities; 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms; 3. Factors that precipitate and aggravate the symptoms; 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms ; 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board ); and  7. Any other factors concerning the individuals functional limitations and restrictions due to pain or other symptoms. SSR 96-7p (1996 WL 374186, *2 (S.S.A.))

alter the ALJ's decision denying benefits, the Appeals Council must explain the weight given to such records. This did not happen here. Instead, the Appeals Council, as directed by 20 C.F.R. § 416.1476(b)(1),[6] stated that the records did not relate to the period on or before the date of the administrative law judge hearing decision, and returned the records to Mr. Johnson with an explanation that he could file a new application. This is the proper procedure pursuant to the Regulations.

Thus, for the reasons given, this Court DENIES the Claimant's Motion for Summary Judgment and GRANTS the Commissioner's Motion. A separate Order shall issue.

Sincerely,

/s/
Paul W. Grimm
United States Magistrate Judge

---

[6] 20 C.F.R § 416.1476(b)(1) specifically states:

> The Appeals Council will consider all the evidence in the administrative law judge record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision. If you submit evidence which does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application.

6